*FILED*

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA** *JAN 30  AM 10: 39*
**OCALA DIVISION** *CLERK, US DISTRICT COURT*
*MIDDLE DISTRICT OF FL*
*OCALA FLORIDA*

HEATHER COGAR,

    Plaintiff,

v.                      CASE NO.:  5:18-cv-52-oc-30 PRC

CITRUS COUNTY SHERIFF'S OFFICE, and
JEFF DAWSY, BRYAN HESSE,
MIKE PRENDERGAST, individually,

    Defendants.
_____/

## COMPLAINT AND JURY TRIAL DEMAND

1.    This is an action for sex discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Florida Civil Rights Act of 1992, Fla. Stat. § 760.01, Defamation, Federal and State Claims for Malicious Prosecution, and Conspiracy, against Defendants CITRUS COUNTY SHERIFF'S OFFICE, JEFF DAWSY, BRYAN HESSE, AND MIKE PRENDERGAST, and alleges as follows:

### JURISDICTION AND VENUE

2.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this case arises under federal law, specifically 42 U.S.C. § 2000e-2, and 42 U.S.C. § 1983.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the state law claims asserted herein which are so related to the federal claims that they form part of the same case or controversy.

3.    Venue is proper in this Court because the unlawful discrimination, malicious prosecution, defamation, and conspiracy giving rise to the claims herein

occurred within this judicial district, and the Defendant is located in this judicial district.

4.      Plaintiff has complied with all conditions precedent to the filing of this action.

5.      A Charge of Discrimination was dual filed by Plaintiff with the Equal Employment Opportunity Commission ("EEOC") and Florida Commission on Human Relations ("FCHR") within 300 days of the alleged unlawful employment practice. Plaintiff filed this action within 90 days of having received a Right to Sue notice from the EEOC (attached hereto as Exhibit "A"), after the charge had been pending with the EEOC and FCHR for more than 180 days and within four years of the discrimination.  All administrative prerequisites have been satisfied and this action is timely filed.

6.      Plaintiff has complied with the provisions of Section 768.28, Florida Statutes by serving upon the Florida Department of Financial Services and Defendant, CITRUS COUNTY SHERIFF'S OFFICE, by Certified Mail, the attached statutory notice (see attached Exhibit "B"), more than six months ago.

7.      Defendant, CIRTUS COUNTY SHERIFF'S OFFICE ("Sheriff's Office") is the primary law enforcement agency serving Citrus County, Florida. It is a government agency and a Florida non-profit corporation with its principal place of business located at 1 Dr. Martin Luther King, Jr. Avenue, Inverness, FL 34450.

8.      Defendant, Jeff Dawsy, a male, was the Sheriff of the Citrus County Sheriff's Office during the course of conduct giving rise to this complaint.

2

9.     Defendant, Bryan Hesse, a male, is a Deputy, an employee of the Citrus County Sheriff's Office.

10.    Defendant, Mike Prendergast, a male, is the Sheriff of the Citrus County Sheriff's Office, who was elected to said position in November 2016.

11.    Plaintiff is a female and, thus, a member of a protected class for purposes of Title VII, 42 U.S.C. § 2000e-2.

12.    The Sheriff's Office receives federal and state funding to service law enforcement functions in Citrus County.  Discrimination on the basis of sex against any individual with respect to compensation, terms, conditions, or privileges of employment is prohibited.

### EMPLOYMENT RELATIONSHIP

13.    On or about, January 6, 2014, Heather Cogar, a 26 year old woman, was hired by the Sheriff's Office as a Deputy Sheriff. She is still employed there but, due to instances described below, has received a demotion and a pay cut and, therefore, has suffered an adverse employment action.

### FACTUAL BACKGROUND

14.    Title VII guarantees freedom from sex discrimination in job assignment, reassignment, transfer, termination and demotion situations.

15.    The Sheriff's Office is the primary law enforcement agency in Citrus County, Florida.

16.    On or about, January 6, 2014, Heather Cogar, a 26 year old woman, was hired by the Sheriff's Office as a Deputy Sheriff.

3

17.    On June, 16, 2014, Ms. Cogar was highlighted on the Sheriff's Office Facebook Page as one of Citrus County's most influential "40 under 40".

18.    In February 2015, Ms. Cogar was off duty at a friend's house in Citrus Hills. Ms. Cogar and the friend decided to drive around town wearing amusing masks. The friend allegedly made an illegal right turn on red, at which point, Deputy Sanchez of the Defendant Sheriff's Office pulled the vehicle over. Ms. Cogar and the friend waited for Mr. Sanchez to approach the car but he never did. Instead, three more deputies arrived on the scene as they conducted a felony traffic stop on the vehicle. Upon review of the camera in the patrol car, Mr. Sanchez is heard to say "I bet you this is Erica and Heather." The friend exited the vehicle first, while still wearing her mask, with her hands in the air as instructed. Ms. Cogar exited the vehicle next but was not wearing her mask. After Mr. Sanchez saw Ms. Cogar, he became upset and told her to leave.

19.    The next day, when Ms. Cogar went to work, she was called into the office by her Sergeant and her Lieutenant. The two chastised Ms. Cogar and told her to "grow up" and that she was very "immature."

20.    A few days later, Ms. Cogar was called into the office again to discuss an Internal Affairs investigation that was initiated against her, purportedly due to an "anonymous" complaint, but really due to discriminatory animus against women. However, it is clear that this "anonymous" complaint was made by one of the male deputies who pulled Ms. Cogar and her friend over.

21.    **First Unfounded Termination.** Ms. Cogar was placed on

Administrative leave for nearly five (5) weeks. When she returned to work, she was called back into the office and advised that she was being terminated by then-Sheriff Jeff Dawsy, purportedly for the following false policy violations: untruthfulness in an official inquiry; conduct unbecoming; and violating laws in the office of the Sheriff, but really for sex discrimination.

22.    **Termination Reversed.** Ms. Cogar knew that none of the reasons for her termination were valid, as she had never lied, nor violated any laws. She appealed the termination decision. She won with a 4-1 vote to be reinstated, but the conduct unbecoming charge was sustained.

23.    The appeal board reversed her termination by then Sheriff Jeff Dawsy and Ms. Cogar was reinstated in June 2015 as a Deputy assigned to the judicial division.

24.    Ms. Cogar received no back pay for the time she was out of work.

25.    A year later, Ms. Cogar was transferred back to the road as a Patrol Deputy based on her exemplary job performance.

26.    In December 2016, Ms. Cogar was arrested for domestic battery and terminated again by then-Sheriff Jeff Dawsy. Her termination paperwork showed the following false policy violations: commission of a misdemeanor and conduct unbecoming.

27.    An Internal Affairs investigation was conducted after Ms. Cogar's termination and the violation "misuse of firearms" was added to the list.

28.    However, as outlined below, Ms. Cogar was innocent of all violations

and was instead subjected to sex discrimination due to the overwhelming sex-based discriminatory animus, male preference and presence in the Sheriff's Office.

29.     Ms. Cogar's boyfriend at the time was Bryan Hesse, who is a deputy with the same Sheriff's Office.  Mr. Hesse's brother, Nick, also is a deputy with the Sheriff's Office. Nick Hesse was a named defendant in a 2014 federal civil rights lawsuit based on his alleged role in forcing a female suspect, during a routine traffic stop, to remove all her clothing, as well as her tampon, in public.  In 2012, Mr. Hesse also received a written reprimand for improperly shooting and killing a citizen's small dog (a Jack Russell Terrier).  Mr. Hesse may also have been reprimanded for getting into a fight at the local Applebee's restaurant.  Yet, Mr. Hesse was never fired or demoted and remained a deputy with the Sheriff's Office until he left to work for another agency.

30.     Ms. Cogar and Mr. Hesse had been dating for about two years and were having issues. Mr. Hesse was verbally and mentally abusive to Ms. Cogar.

31.     On December 9, 2016, Ms. Cogar was out with friends. One of these friends showed Ms. Cogar inappropriate text messages between herself and Mr. Hesse. When Ms. Cogar got home that evening, she confronted Mr. Hesse. Mr. Hesse ordered Ms. Cogar to leave. On her way out of the house, Mr. Hesse began to videotape (including audio recording) Ms. Cogar without her consent, which is a third degree felony pursuant to Fla. Stat. § 934.03. Accordingly, Ms. Cogar attempted to grab the phone from him and requested that he stop filming her, further expressing her nonconsent to the recording.  Mr. Hesse refused to cease and desist

6

his unlawful behavior. Instead, he continued recording and threatened that if Ms. Cogar did not leave, he would call 911. He then called 911.

32.     Mr. Hesse alleged no violence was committed on the 911 call, and instead requested a deputy to report to the house. Ms. Cogar left prior to their arrival.

33.     Mr. Hesse was intoxicated.

34.     Mr. Hesse was inconsistent in his account of what occurred. Alleging no violence and then alleging violence.

35.     Mr. Hesse refused to provide responding deputies a report of what occurred without speaking to the supervisor of his choosing first.

36.     Mr. Hesse manipulated the investigation by dictating what could and should be used as evidence.

37.     Responding deputies accommodated an intoxicated Mr. Hesse, and a discussion between Mr. Hesse and supervisors in the Sheriff's Office took place, and it was determined that Ms. Cogar would be arrested for Battery on Mr. Hesse.

38.     Around 9:00 a.m. the next morning, the Sheriff's Office arrived at Ms. Cogar's home to arrest her.   Sheriff Jeff Dawsy immediately terminated her employment. She was never read her Miranda rights nor her Policeman's Bill of Rights.

39.     There were four officers all above the rank of deputy (Captain, Sergeant, and detectives) who entered Ms. Cogar's home. They stood in front of all her doors to prevent her from leaving. The Sheriff's Office claimed this probable

cause to be based solely upon Mr. Hesse's allegations that Ms. Cogar had hit him in the leg and arm (although there was no evidence that Mr. Hesse suffered any injuries) and based upon the improperly obtained video/audio recording of the incident. Ms. Cogar was extremely devastated and confused.

40.     Because he was a male, Mr. Hesse was never arrested or investigated for the verbal and mental abuse to which he subjected Ms. Cogar, or for the felonious recording of Ms. Cogar without her consent, of which the Sheriff's Office was aware.

41.     The improperly obtained recording is inadmissible for any evidentiary purposes. *See* Fla. Stat. § 934.06 ("no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court...).

42.     In a further attempt to harass Ms. Cogar, defame her and discriminate against her because of her gender, by then-Sheriff Jeff Dawsy unnecessarily published a press release entitled "CCSO Deputy arrested on domestic violence charges."  The Sheriff's Office does not publish press releases when male officers are involved in similar incidents (such as when Mr. Hesse killed a citizen's Jack Russell Terrier).  The press release stated:

> On December 10, 2016, at approximately 3:31 am deputies responded to a home in Inverness in reference to a physical domestic incident that already occurred. The defendant in this case, Heather Cogar, 25 of Hernando, has been a deputy with the Citrus County Sheriff's Office for 3 years. Cogar and Bryan Hesse, 29 of Inverness, were formerly in a dating relationship. Early Saturday morning, after responding to Hesse's Inverness residence, it was determined that Cogar physically battered Hesse. Hesse sustained minor injuries that did not require

8

medical attention. Before deputies arrived at the home, Cogar left the scene and was found late Saturday morning. Cogar was arrested on charges of one count of domestic battery with no bond until first appearance. She was immediately terminated from the Citrus County Sheriff's Office.

43.     **Second Unfounded Termination.** As indicated in the Press Release, the Sheriff's Office terminated Ms. Cogar now a second time, this one based on the false arrest, which was premised on gender discrimination.

44.     Once Ms. Cogar was released from jail, she began to collect more information about the situation. She eventually saw the improperly obtained video which the Sheriff's Office claimed was proof of Ms. Cogar's "battery." The video showed no contact with, and no injuries to, Mr. Hesse. The detective who arrested and interrogated her told Ms. Cogar that "it was just an interview technique" to see if she would admit to anything." Ms. Cogar felt the whole situation was completely unfair and unjustified and appealed her termination decision.

45.     Ms. Cogar submitted her request for appeal and, thirty (30) days later, the appeal hearing was held. It lasted 16 hours. Ms. Cogar won the appeal unanimously. It was discovered that Mr. Hesse's accusations against her were unfounded, and he was found to be untruthful under oath (which is a crime [perjury]).

46.     Mr. Hesse actually has several open cases against him with the State Attorney's office for perjury. Yet, despite the overwhelming evidence that Mr. Hesse committed perjury (as well as felonious recording without consent) there has been no disciplinary action against Mr. Hesse, because he is a male and because the male leadership of the Citrus County Sheriff's Office harbors discriminatory animus

against women. It was said on record by the Internal Affairs investigator, Shelly Clark, that Ms. Cogar never should have been arrested or fired and she was not given a fair and impartial investigation. It was also revealed that Mr. Hesse's supervisor, Captain Brad Smith (one of the four officers inside Ms. Cogar's house when she was arrested) had a conversation with Mr. Hesse right before her arrest behind closed doors with no record. Captain Smith would have known that this behavior was completely unethical and unbecoming given the circumstances.

47.     **Demotion to Dispatch.** Eight (8) days later, the Sheriff begrudgingly hired Ms. Cogar back as required by the appeal decision, but with the following caveats: she was to be demoted and transferred to dispatch (a lower position with a lower rate of pay); she was required to take alcohol and anger management classes; she was denied payment of any back pay lost due to the improper termination; and she was not eligible for high risk retirement.

48.     On January 30, 2017, Ms. Cogar was ordered to report to her new position as a civilian. She is now a Communications Officer in the dispatch office making $17.76 an hour. As a Communications Officer, once Ms. Cogar is done with her training, she will be responsible for taking the 911 calls and dispatching the patrols. Before, as a Deputy Sheriff, she was making $18.70 an hour. Now that she is no longer a sworn officer, she is also no longer able to perform "details," which are extra security jobs that provided her with an additional income of $3,000 - $5,000 a year. Ms. Cogar had depended on these details to help pay her bills.

49.     Sex discrimination is systemic throughout the Sheriff's Office.  During

the relevant time period, among the 200 sworn Deputy Sheriff's, less than 21 of them were women.  All of the Patrol Captains were male.  Everyone in a leadership position at the Sheriff's Office, including the Sheriff, the Undersheriff, the Public Safety Bureau Chief and the Administrative Services Bureau Chief, was male. However, in the lower-paying dispatch office to which Ms. Cogar was demoted, the workforce is mostly women. Male Deputy Sheriff's who were accused of similar violations (or worse) as Ms. Cogar were not demoted or terminated. In fact, in most cases, the strictest form of discipline given was a one-day suspension.

50.    It is public knowledge that Sheriff Jeff Dawsy, the person who fired Ms. Cogar, "is a womanizer and was … having an affair with a married woman, … [and was] witnessed numerous times by … members of the agency getting completely inebriated in public establishments and then get[ting] in his personal vehicle and driving home drunk."  It also is public fodder that another male supervisor is having an affair "with a woman from an agency from an adjoining county," while another supervisor "had been partaking in open sexual activities with his wife utilizing 'swinger' web sites."[1]  Because these activities are engaged in by males, rather than females, none of them are deemed "unbecoming" of an officer.  There is a clear double standard applied to female officers.

51.    After Ms. Cogar's arrest and before her appeal hearing, Sheriff Mike Prendergast was interviewed by the Citrus Country Chronicle regarding her behavior. There were two articles regarding Ms. Cogar and both were on the front

---

[1] http://www.citruscountycoverup.org/WHISTLEBLOWER.htm

page. The Sheriff was quoted to say that she had "anger and alcohol abuse problems and she needed help."

52.     Due to Ms. Cogar's demotion she no longer has a gun or a badge and she no longer has high risk retirement. She was supposed to retire in 30 years, but every year she is not a sworn officer is another year she must remain in the workforce.

53.     By reason of the Citrus County Sheriff's discrimination and harassment, Ms. Cogar is entitled to all legal and equitable remedies, including attorneys' fees and costs, available under Title VII and the FCRA.

54.     Plaintiff has been required to retain the undersigned counsel to represent her in this action and is obligated to pay them a reasonable fee for their services.

**COUNT I**
**Sex Discrimination in Violation of Title VII 42 U.S.C. § 2000e-2**
**(Defendant Sheriff's Office)**

55.     Plaintiff hereby incorporates by reference the allegations contained in Paragraphs 1 to 54 as if fully restated herein.

56.     Defendant's conduct as herein alleged violated Title VII, which prohibits discrimination on the basis of sex.

57.     Defendant committed multiple acts of sex discrimination against the Plaintiff to include adverse employment actions:

       1. Placing Plaintiff on Administrative Leave for conduct unbecoming;

       2. Wrongfully terminating Ms. Cogar twice, and failing to provide back

12

pay;

3. Demoting and reassigning Ms. Cogar to dispatch.

58.   The Sheriff's Office has demonstrated a pattern and practice of repeated discrimination against Plaintiff Cogar by denying her equal enjoyment of all benefits, privileges, terms, and conditions of her employment, and treating her differently than similarly situated non-female deputies.

59.   The foregoing actions of Defendant constitute discrimination against Plaintiff based upon her sex.

60.   Plaintiff was subjected to disparate treatment based on her sex.

61.   Similarly-situated male employees were treated more favorably due to their sex.

62.   Defendant's unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

63.   As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered injury, to which Plaintiff is entitled to legal and injunctive relief.

64.   As a proximate result of Defendant's discrimination in violation of Title VII, Plaintiff has been denied employment opportunities providing substantial compensation and benefits, thereby entitling her to injunctive and equitable monetary relief; and has suffered anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of Defendant's actions, thereby entitling her to compensatory damages.

WHEREFORE, Plaintiff Cogar requests that this Court:

13

1.      Enter a declaratory judgment that the practices complained of in this complaint are unlawful and violate Title VII;

2.      Grant all injunctive relief necessary to bring Defendant into compliance with Title VII;

3.      Order Defendant to pay the wages, salary, employment benefits, and other compensation denied or lost to Plaintiff Cogar by reason of Defendant's unlawful actions, in amounts to be proven at trial;

4.      Order Defendant to pay compensatory damages for Plaintiff Cogar's emotional pain and suffering, in an amount to be proven at trial;

5.      Order Defendant to pay punitive damages;

6.      Order Defendant to pay attorneys' fees and costs of the action;

7.      Order Defendant to pay interest at the legal rate on such damages as appropriate, including pre- and post-judgment interest; and

8.      Grant any further relief that the Court deems just and proper.

**COUNT II**
**Sex Discrimination in Violation of the Florida Civil Rights Act of 1992**
**(Defendant Sheriff's Office)**

65.     Plaintiff hereby incorporates by reference the allegations contained in Paragraphs 1 to 54 as if fully restated herein.

66.     Defendant's conduct as herein alleged violated the Florida Civil Rights Act of 1992, which prohibits discrimination on the basis of sex.

67.     Defendant committed multiple acts of sex discrimination against the Plaintiff to include adverse employment actions:

1. Placing Plaintiff on Adminstrative Leave for conduct unbecoming;

2. Wrongfully terminating and failing to provide back pay;

3. Demoting and reassigning Ms. Cogar to dispatch.

68. The Sheriff's Office has demonstrated a pattern and practice of repeated discrimination against Plaintiff by denying her equal enjoyment of all benefits, privileges, terms, and conditions of her employment, and treating her differently than similarly situated non-female deputies.

69. The foregoing actions of Defendant constitute discrimination against Plaintiff based upon her sex.

70. Plaintiff was subjected to disparate treatment based on her sex.

71. Similarly-situated male employees were treated more favorably due to their sex.

72. Defendants' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

73. As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered injury, to which Plaintiff is entitled to legal and injunctive relief.

74. As a proximate result of Defendant's discrimination in violation of the FCRA, Plaintiff has been denied employment opportunities providing substantial compensation and benefits, thereby entitling her to injunctive and equitable monetary relief; and has suffered anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of Defendant's actions, thereby entitling her to compensatory damages.

WHEREFORE, Plaintiff Cogar requests that this Court:

1.      Enter a declaratory judgment that the practices complained of in this complaint are unlawful and violate the FCRA;

2.      Grant all injunctive relief necessary to bring Defendant into compliance with the FCRA;

3.      Order Defendant to pay the wages, salary, employment benefits, and other compensation denied or lost to Plaintiff Cogar by reason of Defendant's unlawful actions, in amounts to be proven at trial;

4.      Order Defendant to pay compensatory damages for Plaintiff Cogar's emotional pain and suffering, in an amount to be proven at trial;

5.      Order Defendant to pay attorneys' fees and costs of the action;

6.      Order Defendant to pay interest at the legal rate on such damages as appropriate, including pre- and post-judgment interest; and

7.      Grant any further relief that the Court deems just and proper.

## COUNT III
**Defamation as to False Statements Made/Published by Defendant in Press Release on December 10, 2016.**
**(Jeff Dawsy)**

75.     Plaintiff, Cogar, re-allges and re-affirms the allegations contained in paragraphs 1-54 above as if fully set forth herein and further alleges as the following:

76.     On or about December 10, 2016, Defendant Sheriff's Office made and/or published false and defamatory statements about Plaintiff Cogar wherein the Sheriff's Office falsely accused Ms. Cogar of committing the criminal offense of

domestic battery against Bryan Hesse. The Sheriff's Office falsely included that Mr. Hesse sustained minor injuries and that Plaintiff fled the scene of the incident.

77.     The Sheriff's Office Press Release announced Plaintiff's immediate termination.

78.     This press release was put together with the false statements made by Bryan Hesse. It was published during the tenure of then-Sheriff Dawsy, and with his approval.

79.     This press release was published on the Sheriff's Office Facebook page where it received over 100 comments from the public.

80.     Defendant published the false and defamatory statements knowing them to be false or with reckless disregard for whether they were false or true.

81.     Dawsy acted in bad faith and with malicious purpose and in a manner exhibiting wanton and willful disregard of Plaintiff Cogar's rights.

82.     The false and defamatory statements caused Plaintiff Cogar to lose her job with the Sheriff's Office, and portrayed her as a violent criminal and pariah in the community.

83.     The false and defamatory statements concerning Plaintiff Cogar made by the Sheriff's Office were not only intended to injure Plaintiff Cogar by causing her to lose her job but also subjecting her to criminal conviction and punishment and forcing her to retain legal counsel to defend her because of the bogus criminal charges.

84.     The false and defamatory statements caused Plaintiff Cogar damage,

including but not limited to public humiliation, interference with job prospects, embarrassment, mental and emotional anguish and injury.

WHEREFORE, Plaintiff Cogar requests that this Court enter judgment against the Jeff Dawsy for actual and special damages plus costs for this action, and any other relief so entitled under Florida law.

## COUNT IV
### Defamation as to False Statements Made/Published by Defendant Sheriff Prendergast in Citrus County Chronicle Interview (Defendant Sheriff's Office and Prendergast)

85.     Plaintiff Cogar, re-alleges and re-affirms the allegations contained in paragraphs 1-54 above as if fully set forth herein and further alleges the following:

86.     On or about January 23, 2017, Defendant Sheriff Mike Prendergast in his official capacity, made and/or published false and defamatory statements about Plaintiff Cogar wherein Sheriff Prendergast gave a statement published by the Citrus Country Chronicle regarding Ms. Cogar, her employment, mental, emotional, and psychological health and fitness.

87.     Defendant Prendergast's statements were published in two articles, both were on the front page.

88.     Sheriff Prendergast stated: Ms. Cogar had anger and alcohol abuse problems and she needed help.

89.     Defendant published the false and defamatory statements knowing them to be false or with reckless disregard for whether they were false or true.

90.     Prendergast acted in bad faith and with malicious purpose and in a manner exhibiting wanton and willful disregard of Plaintiff Cogar's rights.

91. The false and defamatory statements caused Plaintiff Cogar public humiliation, embarrassment, mental and emotional anguish and injury.

WHEREFORE, Plaintiff Cogar requests that this Court enter judgment against the Sheriff's Office and Prendergast, for actual and special damages plus costs for this action, and any other relief so entitled under Florida law.

## COUNT V
### Malicious Prosecution Pursuant to 42 U.S.C. § 1983
### (Defendant Sheriff's Office)

92. Plaintiff Cogar, re-alleges and re-affirms the allegations contained in paragraphs 1-54 above as if fully set forth herein and further alleges the following:

93. On or about December 10, 2016, Plaintiff Cogar was arrested and criminal proceedings were commenced against her in Citrus County Case number 2016MM1147, by the Sheriff's Office.

94. On December 9, 2016, Mr. Bryan Hesse was angry with Ms. Cogar and ordered her to leave their residence.

95. On her way out of the house, Mr. Hesse began to videotape (including audio recording) Ms. Cogar without her consent, which is a third degree felony pursuant to Fla. Stat. § 934.03, and an invasion into her privacy rights.

96. Ms. Cogar attempted to grab the phone from Mr. Hesse and requested that he stop filming her. Mr. Hesse refused. Instead, he continued recording and called 911.

97. **911 Call: Verbal Only.** Mr. Hesse then called 911 and specifically reported a "verbal" incident that was not physical.

98.   Deputy Snedeker was the first law enforcement officer to arrive and contact Deputy Hesse.

99.   Deputy Hesse refused to give a statement to Deputy Snedeker and insisted on talking to Sargent Callahan.   Deputy Snedeker found Mr. Hesse's position "odd."

100.   Deputy Snedeker testified that Mr. Hesse did not want to give a statement prior to Sargent Callahan's arrival.

101.   He testified that Mr. Hesse only agreed to give Deputy Snedeker a statement after Sargent Callahan told him it was "in his best interests" to give one.

102.   Mr. Hesse gave a rambling narrative and then told Deputy Snedeker "end of statement," or words to that affect.

103. **Incomplete Investigation:** Deputy Snedeker testified he would have asked Mr. Hesse more questions but Mr. Hesse made clear he was not going to participate in that.

104.   No deputies investigated why Mr. Hesse repeatedly told 911 Dispatch there was no violence but later made a sworn statement that a battery occurred.

105.   In Deputy Snedeker's audio recording of Mr. Hesse it is apparent that Mr. Hesse sounds drunk:   During the interview, he initially stated the date was September, and then corrected himself to state December.

106.   At Ms. Cogar's Appeal Hearing, Mr. Hesse admitted under oath that prior to making this allegation, he had spent the night drinking up to five beers in Spring Hill, then he went to a party in Citrus County where he continued to drink

20

alcohol, and then went to another bar where he had at least one shot of liquor before driving home.

107.   The investigation ignored, omitted, or hid that Mr. Hesse was intoxicated. There is no mention that Mr. Hesse had been drinking, smelled of an odor of alcohol, or exhibited any indicators of impairment.

108.   Investigators look for conflicting or inconsistent statements prior to making an arrest.

109.   Sheriff's Office Captain Brad Smith also responded to the 911 call at Defendant Hesse's house.

110.   Mr. Hesse told Captain Smith that Ms. Cogar battered his arm and hit his neck.

111.   Mr. Hesse denied in every other sworn statement that he was hit in the neck by Ms. Cogar.

112.   Mr. Hesse did not claim he was struck in the leg to Captain Smith.

113.   Mr. Hesse did claim he was hit in the leg to the other investigators.

114.   There is no independent evidence to establish Ms. Cogar punched, struck or hit Mr. Hesse in the arm, leg or neck.

115.   Additionally, investigators typically look for a motive to lie or fabricate claims.

116.   Just days prior to this incident, Mr. Hesse sent a text to a friend of Deputy Cogar's stating: "She doesn't want to be with me anymore and I lost my shit…"

117.   Mr. Hesse sent Plaintiff Cogar a verbally and emotionally abusive email filled with expletives, expressing how much he hated her, and telling her to go get "fired" from her job.

118.   Defendant Hesse also admitted to internal affairs that in the week or so leading up to this incident he had become "jealous" of how much time Ms. Cogar spent with her road patrol co-workers.

119.   At the Hearing, Internal Affairs Investigators opined that additional evidence should have been obtained prior to arrest and that the investigation and arrest process was unfair to Ms. Cogar.

120.   The Appeal Board, including four highly-seasoned law enforcement officers, issued a 5-0 recommendation that the allegation of battery should not be sustained and Deputy Cogar should be reinstated as a deputy sheriff.

121.   The State Attorney's Office filed a No Information, declining to pursue formal charges against Plaintiff Cogar.

122.   The State Attorney's Office made this filing decision because "the evidence was insufficient to prove guilt".

123.   Therefore the termination of the original proceeding constituted a bona fide determination in favor of the present Plaintiff.

124.   The Sheriff's Office failed to adequately investigate Defendant Hesse's claims to develop probable cause for arrest. Instead, they allowed Defendant Hesse to decide which officer to speak with prior to making any statement. The Sheriff's Office completely ignored the inconsistent statement to 911. The Sheriff's Office

intentionally hid or omitted that Mr. Hesse was intoxicated. The Sheriff's Office intentionally omitted that Defendant Hesse gave inconsistent statements to deputies and law enforcement about what occurred.

125.   Plaintiff Cogar has a Fourth Amendment Right under the U.S. Constitution to be free from unreasonable searches and seizures.

126.   The Sheriff's Office arrested her based on insufficient probable cause resulting in false arrest or false imprisonment in addition to a violation of her Fourth Amendment Rights.

127.   There was a lack of probable cause to support Plaintiff's Cogar's arrest and imprisonment.

128.   The Sheriff's Office's conduct violated clearly established statutory and constitutional rights of which a reasonable person would have known.

129.   Plaintiff Cogar's Fourth Amendment Rights were violated.

130.   Plaintiff Cogar was falsely arrested and imprisoned based upon the Sheriff's Office custom of sex discrimination, which constituted reckless indifference to Plaintiff Cogar's Fourth Amendment Rights.

131.   The Sheriff's Office custom of sex discrimination caused the violation of Plaintiff Cogar's Fourth Amendment Rights.

132.   As a result of this constitutional violation, false arrest, and/or false imprisonment Ms. Cogar suffered multiple damages:

1) She was incarcerated and needed to post bond for her release;
2) She was terminated from the Sheriff's Office suffering emotional, mental, and psychological damage;
3) She was publicly humiliated and embarrassed through press releases;

4) She was required to obtain legal representation to defend her against the false allegations.

133.   Pursuant to 42 U.S.C. § 1988(b), a prevailing plaintiff is entitled to payment of reasonable attorneys' fees in any action to enfoce a provision of Section 1983.

WHEREFORE, Plaintiff Cogar requests that this Court enter judgment against the Sheriff's Office, for damages plus costs, including attorneys' fees, for this action, and any other relief so entitled under Florida or federal law, and respectfully requests a trial by jury.

### COUNT VI
### Malicious Prosecution Under Florida Law
### (Defendant Sheriff'sOffice, Defendant Bryan Hesse)

134.   Plaintiff Cogar, re-alleges and re-affirms the allegations contained in paragraphs 1-54 above as if fully set forth herein and further alleges the following:

135.   On or about December 10, 2016, Plaintiff Cogar was arrested and criminal proceedings were commenced against her in Citrus County Case number 2016MM1147, by the Sheriff's Office.

136.   On December 9, 2016, Mr. Bryan Hesse was angry with Ms. Cogar and ordered her to leave their residence.

137.   On her way out of the house, Mr. Hesse began to videotape (including audio recording) Ms. Cogar without her consent, which is a third degree felony pursuant to Fla. Stat. § 934.03, and an invasion into her privacy rights.

138.   Ms. Cogar attempted to grab the phone from Mr. Hesse and requested that he stop filming her.  Mr. Hesse refused. Instead, he continued recording and

called 911.

139. **911 Call: Verbal Only.** Mr. Hesse then called 911 and specifically reported a "verbal" incident that was not physical.

140. Deputy Snedeker was the first law enforcement officer to arrive and contact Deputy Hesse.

141. Deputy Hesse refused to give a statement to Deputy Snedeker and insisted on talking to Sargent Callahan.  Deputy Snedeker found Deputy Hesse's position "odd."

142. Deputy Snedeker testified that Deputy Hesse did not want to give a statement prior to Callahan's arrival.

143. He testified that Mr. Hesse only agreed to give Deputy Snedeker a statement after Callahan told him it was "in his best interests" to give one.

144. Mr. Hesse gave a rambling narrative and then told Deputy Snedeker "end of statement," or words to that affect.

145. **Incomplete Investigation:** Deputy Snedeker testified he would have asked Mr. Hesse more questions but Defendant Hesse made clear he was not going to participate in that.

146. No deputies investigated why Mr. Hesse repeatedly told 911 Dispatch there was no violence but later made a sworn statement that a battery occurred.

147. In Deputy Snedeker's audio recording of Mr. Hesse it is apparent that Mr. Hesse sounds drunk:  During the interview, he initially stated the date was September, and then corrected himself to state December.

148.   At Ms. Cogar's Appeal Hearing, Mr. Hesse admitted under oath that prior to making this allegation, he had spent the night drinking up to five beers in Spring Hill, then he went to a party in Citrus County where he continued to drink alcohol, and then went to another bar where he had at least one shot of liquor before driving home.

149.   The investigation ignored, omitted, or hid that Mr. Hesse was intoxicated. There is no mention that he had been drinking, smelled of an odor of alcohol, or exhibited any indicators of impairment.

150.   Investigators look for conflicting or inconsistent statements prior to making an arrest.

151.   Sheriff's Office Captain Brad Smith also responded to the 911 call at Mr. Hesse's house.

152.   Mr. Hesse told Captain Smith that Ms. Cogar battered his arm and hit his neck.

153.   Mr. Hesse denied in every other sworn statement that he was hit in the neck by Ms. Cogar.

154.   Mr. Hesse did not claim he was struck in the leg to Captain Smith.

155.   Mr. Hesse did claim he was hit in the leg to the other investigators.

156.   There is no independent evidence to establish Ms. Cogar punched, struck or hit Mr. Hesse in the arm, leg or neck.

157.   Additionally, investigators typically look for a motive to lie or fabricate claims.

158.   Just days prior to this incident, Mr. Hesse sent a text to a friend of Ms. Cogar's stating: "She doesn't want to be with me anymore and I lost my shit…"

159.   Mr. Hesse sent Plaintiff Cogar a verbally and emotionally abusive email filled with expletives, expressing how much he hated her, and telling her to go get "fired" from her job.

160.   Mr. Hesse also admitted to internal affairs that in the week or so leading up to this incident he had become "jealous" of how much time Ms. Cogar spent with her road patrol co-workers.

161.   At Hearing, Internal Affairs Investigators opined that additional evidence should have been obtained prior to arrest and that the investigation and arrest process was unfair to Ms. Cogar.

162.   The Appeal Board, including four highly-seasoned law enforcement officers, issued a 5-0 recommendation that the allegation of battery should not be sustained and Deputy Cogar should be reinstated as a deputy sheriff.

163.   The State Attorney's Office filed a No Information, declining to pursue formal charges against Plaintiff Cogar.

164.   The State Attorney's Office made this filing decision because "the evidence was insufficient to prove guilt".

165.   Therefore the termination of the original proceeding constituted a bona fide determination in favor of the present Plaintiff.

166.   The Sheriff's Office failed to adequately investigate Defendant Hesse's claims to develop probable cause for arrest. Instead, they allowed Defendant Hesse

to decide which officer to speak with prior to making any statement. The Sheriff's Office completely ignored the inconsistent statement to 911. The Sheriff's Office intentionally hid or omitted that Mr. Hesse was intoxicated. The Sheriff's Office intentionally omitted that Defendant Hesse gave inconsistent statements to deputies and law enforcement about what occurred.

167. Plaintiff Cogar has a Fourth Amendment Right under the U.S. Constitution to be free from unreasonable searches and seizures.

168. The Sheriff's Office arrested her based on insufficient probable cause resulting in false arrest or false imprisonment in addition to a violation of her Fourth Amendment Rights.

169. There was a lack of probable cause to support Plaintiff's Cogar's arrest and imprisonment.

170. The Sheriff's Office's conduct violated clearly established statutory and constitutional rights of which a reasonable person would have known.

171. Plaintiff Cogar's Fourth Amendment Rights were violated.

172. Plaintiff Cogar was falsely arrested and imprisoned based upon the Sheriff's Office custom of sex discrimination, which constituted reckless indifference to Plaintiff Cogar's Fourth Amendment Rights.

173. The Sheriff's Office custom of sex discrimination caused the violation of Plaintiff Cogar's Fourth Amendment Rights.

174. As a result of this constitutional violation, false arrest, and/or false imprisonment Ms. Cogar suffered multiple damages:

5) She was incarcerated and needed to post bond for her release;
6) She was terminated from the Sheriff's Office suffering emotional, mental, and psychological damage;
7) She was publicly humiliated and embarrassed through press releases;
8) She was required to obtain legal representation to defend her against the false allegations.

WHEREFORE, Plaintiff, Heather Cogar demands judgment against the Sheriff's Office, for damages in excess of $15, 000.00 plus costs for this action, and any other relief so entitled under Florida law, and respectfully requests a trial by jury.

**COUNT VII**
**Civil Conspiracy 42 U.S.C. § 1983**
**(Sheriff's Office)**

175.   Plaintiff Cogar, re-alleges and re-affirms the allegations contained in Paragraphs 1 through 54 above as if fully set forth herein and alleges the following:

176.   Defendant Sheriff's Office, former Sheriff Dawsy, Detective Hesse, and Captain Smith are parties to a civil conspiracy under 42 U.S.C. § 1983.

177.   A civil conspiracy is an agreement made by officials to deny an individual a constitutional right.

178.   Defendant Hesse and Defendant Smith with the assistance of non-Defendant Sargent Callahan, and  deputies, made an agreement to falsely imprison Ms. Cogar, falsify a police report, and deny Ms. Cogar her Fourth Amendment right to be free from unlawful seizure, or unlawful arrest.

179.   As indicated previously, Mr. Hesse called 911 to report a verbal dispute. In that call he states that no violence occurred, only verbal.

180.   He refused to give a statement to responding deputies without first speaking with Sergeant Callahan.

181. It was only after speaking with Callahan that Ms. Cogar was falsely accused of a crime. Ms. Cogar was not arrested however, until Captain Brad Smith was consulted by Hesse.

182. In their official police report providing probable cause for arrest, deputies omit, ignore, or hide that Mr. Hesse was intoxicated or impaired.

183. In their official police report providing probable cause for arrest, deputies omit, ignore or hide the inconsistent statements made by Defendant Hesse that the incident was only verbal.

184. This report also omits, ignores or hides inconsistent statements made by Defendant Hesse concerning the location of his injuries. He stated that he was hit in the neck to certain investigators but not others.

185. The Sheriff's Office had a history of treating Ms. Cogar unfairly, this incident was their opportunity to finally terminate her position with the Sheriff's Office.

186. Two or more persons, Defendant Hesse, Sargeant Callahan, and Captain and Smith in particular conferred about this incident prior to a decision to arrest Ms. Cogar was made.

187. Determining whether probable cause exists is not typically determined in a misdemeanor domestic battery by multiple high ranking law enforcement officers.

188. If it is, then one would expect a diligent investigation to occur.

189. The investigation was replete with errors and omissions to the degree

that Internal Affairs determined it was unfair to Ms. Cogar and her arrest was reversed internally by 5-0 vote.

190.    Defendant Hesse, Sargeant Callahan, and Captain Smith agreed to violate Ms. Cogar's Fourth Amendment constitutional right against unlawful and unreasonable seizure.

191.    Based on the agreement between Defendant Hesse, Sargeant Callahan, and Captain Smith an actual denial of Ms. Cogar's Fourth Amendment rights occurred, Ms. Cogar was ultimately arrested.

192.    In this matter, the arrest was not supported by sufficient probable cause.

193.    Plaintiff Cogar has a Fourth Amendment Right under the U.S. Constitution to be free from unreasonable searches and seizures.

194.    The Sheriff's Office arrested her based on insufficient probable cause resulting in false arrest or false imprisonment in addition to a violation of her Fourth Amendment Rights.

195.    There was a lack of probable cause to support Plaintiff's Cogar's arrest and imprisonment.

196.    The Sheriff's Office's conduct violated clearly established statutory and constitutional rights of which a reasonable person would have known.

197.    Plaintiff Cogar's Fourth Amendment Rights were violated.

198.    Plaintiff Cogar was falsely arrested and imprisoned based upon the Sheriff's Office custom of sex discrimination, which constituted reckless indifference

to Plaintiff Cogar's Fourth Amendment Rights.

199.    The Sheriff's Office custom of sex discrimination caused the violation

of Plaintiff Cogar's Fourth Amendment Rights.

200.    As a result of this constitutional violation, false arrest, and/or false

imprisonment Ms. Cogar suffered multiple damages:

> 1) She was incarcerated and needed to post bond for her release;
> 2) She was terminated from the Sheriff's Office suffering emotional, mental, and psychological damage;
> 3) She was publicly humiliated and embarrassed through press releases;
> 4) She was required to obtain legal representation to defend her against the false allegations.

201.    Pursuant to 42 U.S.C. § 1988(b), a prevailing plaintiff is entitled to

payment of reasonable attorneys' fees in any action to enfoce a provision of Section

1983.

WHEREFORE, Plaintiff Cogar requests that this Court enter judgment against

the Sheriff's Office, for damages plus costs, including attorneys' fees, for this action,

and any other relief so entitled under Florida or federal law, and respectfully

requests a trial by jury.

## COUNT VIII
### Civil Conspiracy under Florida Law
### (Defendants Sheriff's Office, Dawsy, Hesse, Prendergast)

202.    Plaintiff Cogar, re-alleges and re-affirms the allegations contained in

Paragraphs 1 through 54 above as if fully set forth herein and alleges the following:

203.    Defendant Sheriff's Office, former Sheriff Dawsy, Detective Hesse, and

are parties to a civil conspiracy under 42 U.S.C. § 1983.

204.    A civil conspiracy under Florida law is fundamentally an agreement

32

made to commit a tort.

205. In this matter, Defendant Hesse made false claims that he was battered by Ms. Cogar after stating to 911 that the incident was verbal only.

206. Defendant Hesse refused to provide a statement to responding deputies until his spoke with Sargent Callahan.

207. Defendant Hesse and Sargent Callahan discussed pursuing charges against Ms. Cogar and is quoted as saying it would be in Defendant Hesse's best interest to make a statement.

208. Defendant Hesse was clearly intoxicated. He could not state what month it was accurately.

209. Defendant Hesse admits to drinking throughout the evening.

210. Law enforcement does not mention anything about Defendant Hesse appearing intoxicating in their report. The Sheriff's Office intentionally ignored or omitted this fact.

211. The Sheriff's Office ignored all facts unfavorable to Defendant Hesse in order to contrive Ms. Cogar's arrest.

212. The Sheriff's Office ignored Defendant Hesse's failure to report any violence on the 911 call, and the outright denial of violence on the same call.

213. The Sheriff's Office ignored Defendant Hesse's inconsistent statements concerning location of injuries.

214. Defendant Hesse and Sargent Callahan and Captain Smith had an agreement or understanding that Defendant Hesse would accuse Ms. Cogar of

battery.

215.   Defendant Hesse, Sargent Callahan, Captain Smith and the Sheriff's Office contributed to the false statement made by Defendant Hesse.

216.   Defendant Hesse, Sargent Callahan, Captain Smith and the Sheriff's Office contributed to the omissions concerning any unfavorable facts about Defendant Hesse's condition, lack of consistency, and lack of evidence supporting arrest.

217.   Defendant Hesse, Sargent Callahan, Captain Smith and the Sheriff's Office had Ms. Cogar arrested for battery based on Defendant Hesse's false claims.

218.   Defendant Hesse, Sargent Callahan, Captain Smith and the Sheriff's Office agreed to commit the tort of false imprisonment, malicious prosecution, and defamation by falsely claiming a crime occurred, repeating the false statements, and having Plaintiff Cogar arrested without due diligent investigation.

219.   Before making an arrest, deputies confer about the grounds for the arrest. Here, Defendants Sheriff's Office, and Defendant Hesse, and Captain Smith agreed upon minimizing or ignoring damaging evidence against Hesse, fabricated a police report, and determined to conduct a false arrest or false imprisonment of Plaintiff Cogar.

220.   Defendants Sheriff's Office, and Hesse all owed a duty to Plaintiff Cogar to protect the Plaintiff from making false and defamatory allegations accusing a sworn law enforcement office of battering another deputy.

221.   Defendant Sheriff's Office, and Defendant Hesse all owed a duty to

Plaintiff Cogar to protect the Plaintiff from false arrest and false imprisonment based on inconsistent statements, made by an intoxicated, and emotionally unstable witness, who refused to provide a statement to responding deputies.

222. Defendant Sheriff's Office, Defendant Hesse, Defendant Dawsy, and non-Defendants Smith and Callahan, committed an overt act in furtherance of their conspiracy to include:

1) Hesse: making false statements to deputies about a battery;

2) Captain Smith and the Sheriff's Office met with Mr. Hesse to contrive the false statements ;

3) Captain Smith and Sheriff's Office failed to investigate any facts of the alleged crime not supporting Mr. Hesse's contrived version;

4) Captain Smith and the Sheriff's Office arrest of Ms. Cogar without probable cause;

5) then- Sheriff Dawsy publishing a press release repeating false claims of a crime committed by Plaintiff and;

6) Sheriff Prendergast published false claims about Plaintiff needing help and treatment for alcohol related problems.

223. There was a lack of probable cause to support Plaintiff's Cogar's arrest and imprisonment.

224. The Sheriff's Office's conduct violated clearly established statutory and constitutional rights of which a reasonable person would have known.

225. Plaintiff Cogar's Fourth Amendment Rights were violated.

226.   Plaintiff Cogar was falsely arrested and imprisoned based upon the Sheriff's Office custom of sex discrimination, which constituted reckless indifference to Plaintiff Cogar's Fourth Amendment Rights.

227.   The Sheriff's Office custom of sex discrimination caused the violation of  Plaintiff Cogar's Fourth Amendment Rights.

228.   Defendant Sheriff's Office, Defendant Dawsy, non-Defendant Smith, and Defendant Hesse's overt acts caused Plaintiff to suffer damages.

229.   As a result of this constitutional violation, false arrest, and/or false imprisonment Ms. Cogar suffered multiple damages:

1) She was incarcerated and needed to post bond for her release;
2) She was terminated from the Sheriff's Office suffering emotional, mental, and psychological damage;
3) She was publicly humiliated and embarrassed through press releases;
4) She was required to obtain legal representation to defend her against the false allegations.

WHEREFORE, Plaintiff Cogar requests that this Court enter judgment against the Sheriff's Office, for damages plus costs, including attorneys' fees, for this action, and any other relief so entitled under Florida or federal law, and respectfully requests a trial by jury.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury as to all issues.

Dated: January 29, 2018.

Respectfully submitted,

**WHITTEL & MELTON, LLC**
*/s/ Jay P. Lechner*
Jay P. Lechner, Esq.
Florida Bar No.: 0504351
One Progress Plaza
200 Central Avenue, #400
St. Petersburg, Florida 33701
Telephone: (727) 822-1111
Facsimile: (727) 898-2001
Service Email:
Pleadings@theFLlawfirm.com
lechnerj@theFLlawfirm.com
sonia@theFLlawfirm.com
*Attorneys for Plaintiff*



U.S. Department of Justice

Civil Rights Division

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

CERTIFIED MAIL

7016 2140 0000 5581 1270

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson , EMP, PHB, Room 4701*
*Washington, DC 20530*

December 06, 2017

Ms. Heather Cogar
c/o Jay P. Lechner, Esquire
Law Offices of Whittel & Melton
One Progress Plaza
200 Central Ave., Suite 400
St. Petersburg, FL  33701

Re:  EEOC Charge Against *Citrus County Sheriff's Office*
    No. 511201701324

Dear Ms. Cogar:

    Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

    If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

    The investigative file pertaining to your case is located in the EEOC Tampa Area Office, Tampa, FL.

    This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

                      Sincerely,

                      John M. Gore
            Acting Assistant Attorney General
               Civil Rights Division

          by *Karen L. Ferguson*
             Karen L. Ferguson
          Supervisory Civil Rights Analyst
          Employment Litigation Section

cc: Tampa Area Office, EEOC
    Citrus County Sheriff's Office

**EXHIBIT A**

Robert G. Whittel, Esq.[5,7,8]
Jason M. Melton, Esq.[3,4,5]
Jay P. Lechner, Esq.[1,5,6]
Christopher M. Klemawesch, Esq.[2]
Tracee L. Ivins, Esq.
Michael Mates, Esq.[7,9]
William J. Sheslow, Esq.
Kelly A. Cavanaugh, Esq.

Of Counsel:
Gina M. Girardot, Esq.[10]
Patrick W. Harland, Jr., Esq.[5]

[1] Board Certified, Florida Bar - Labor and Employment
[2] Board Certified, Florida Bar - Criminal Trial
[3] Life Member, Multi-Million Dollar and Million Dollar Advocates Forum
[4] AV-Preeminent, Martindale-Hubbell
[5] Super Lawyers, Thomson Reuters
[6] Best Lawyers, US News & World Report
[7] Licensed in New York
[8] Licensed in Georgia, District of Columbia
[9] Licensed in North Carolina
[10] Licensed in Ohio

# WHITTEL
## & 
# MELTON

www.theFLlawfirm.com
FL Statewide: 866-608-5529

### PERSONAL INJURY - WRONGFUL DEATH
### CRIMINAL DEFENSE - CRIMINAL APPEALS
### LABOR & EMPLOYMENT

Central Florida
11020 Northcliffe Blvd.
Spring Hill, FL 34608
(352) 683-2016 ph
(352) 556-4839 fax

Tampa Bay
One Progress Plaza
200 Central Avenue, Suite 400
St. Petersburg, FL 33701
(727) 822-1111 ph
(727) 898-2001 fax

South Florida
Boca Aviation Building
3700 Airport Road
Suite 401
Boca Raton, FL 33431
(561) 708-0800 ph
(561) 708-0801 fax

May 23, 2017

### VIA U.S. CERTIFIED MAIL # 7016 0600 0001 0152 1309
### RETURN RECEIPT REQUESTED

Sheriff Mike Prendergast
Citrus County Sheriff's Office
1 Dr. Martin Luther King Jr. Avenue
Inverness, FL 34450-4968

> **Re:** **Responsible Party: Citrus County Sheriff's Office**
> **Claimant: Heather Cogar**
> **DOB:** ████91
> **Place of Birth: Florida**
> **SS#:** ████-6894
> **Date of Injury: 12/10/16 and continuing**
> **Type of Claim: Defamation; False Arrest; Malicious Prosecution;**
> **Discrimination**
> **Location of Incident: Citrus County, Florida**

Dear Sir/Madam:

Please be advised that this firm represents Heather Cogar, who was injured and suffered additional harm on December 10, 2016 (and ongoing), due to defamation, false arrest, malicious prosecution and discrimination by the Citrus County Sheriff's Office ("Sheriff's Office"). This letter serves as notice of my client's claim, pursuant to Fla. Stat. § 768.28.

More specifically, Ms. Cogar, a Sheriff's Office employee, was twice falsely accused of illegal conduct by agents of the Sheriff's Office. She was falsely arrested and jailed by the Sheriff's Office without probable cause (she wasn't even read her Miranda rights). Multiple inconsistencies in the investigation have revealed that the Sheriff's Office and its agents have engaged in an unwarranted witchhunt against Ms. Cogar, constituting malicious prosecution under Florida law. All of the charges against her have been dismissed, despite the concerted efforts of male officers of the Sheriff's

Office, to provide false testimony against her under oath, a felony under Florida law. The allegations against Ms. Cogar were based on the false claim of battery, and a false claim of throwing a gun which were rejected by the Career Services Board. These two allegations made up the conduct unbecoming an officer charge sustained by the Sheriff, but were unsubstantiated by the CSB.

Even after all charges against her were proven false, the Sheriff's Office continued to unlawfully defame Ms. Cogar, including directly to media outlets. The Sheriff even went so far as to go on record falsely accusing Ms. Cogar of mental illness and alcoholism and stating that she needs to "get[] the help she needs to be successful here in our organization and in life." All of the evidence conclusively demonstrates that Ms. Cogar has not done anything wrong and that these accusations are false and outrageous. Ms. Cogar's treatment by the Sheriff's Office reflects an overarching pattern of gender discrimination by and within the Sheriff's Office.

In accordance with Fla. Stat. § 768.28, you are hereby notified that Ms. Cogar is hereby presenting this claim in writing for damages in excess of Fifteen Thousand Dollars ($15,000.00). Ms. Cogar does not owe to the State, its agencies, officers or subdivisions any prior adjudicated penalties, fines, fees, victim restitution fund, and/or judgments in excess of $200.

Your attention to this matter is appreciated.

Very truly yours,
WHITTEL & MELTON, LLC

Jay P. Lechner, Esq.

Cc:    Department of Financial Services

2

Robert G. Whittel, Esq. [5,7,8]
Jason M. Melton, Esq. [3,4,5]
Jay P. Lechner, Esq. [1,5,6]
Christopher M. Klemawesch, Esq. [2]
Tracee L. Ivins, Esq.
Michael Mates, Esq. [7,9]
William J. Sheslow, Esq.
Kelly A. Cavanaugh, Esq.

Of Counsel:
Gina M. Girardot, Esq. [10]
Patrick W. Harland, Jr., Esq. [5]

[1] Board Certified, Florida Bar - Labor and Employment
[2] Board Certified, Florida Bar - Criminal Trial
[3] Life Member, Multi-Million Dollar and Million Dollar Advocates Forum
[4] AV-Preeminent, Martindale-Hubbell
[5] Super Lawyers, Thomson Reuters
[6] Best Lawyers, US News & World Report
[7] Licensed in New York
[8] Licensed in Georgia, District of Columbia
[9] Licensed in North Carolina
[10] Licensed in Ohio

# WHITTEL

## — & —

# MELTON

www.theFLlawfirm.com
FL Statewide: 866-608-5529

### PERSONAL INJURY - WRONGFUL DEATH
### CRIMINAL DEFENSE - CRIMINAL APPEALS
### LABOR & EMPLOYMENT

Central Florida
11020 Northcliffe Blvd.
Spring Hill, FL 34608
(352) 683-2016 ph
(352) 556-4839 fax

Tampa Bay
One Progress Plaza
200 Central Avenue, Suite 400
St. Petersburg, FL 33701
(727) 822-1111 ph
(727) 898-2001 fax

South Florida
Boca Aviation Building
3700 Airport Road
Suite 401
Boca Raton, FL 33431
(561) 708-0800 ph
(561) 708-0801 fax

May 23, 2017

### VIA U.S. CERTIFIED MAIL #7016 0600 0001 0152 1293
### RETURN RECEIPT REQUESTED

Department of Financial Services
Division of Risk Management
200 E. Gaines Street
Tallahassee, Florida 32399-0300

**Re:   Responsible Party: Citrus County Sheriff's Office**
**Claimant: Heather Cogar**
**DOB: ▓▓▓/91**
**Place of Birth: Florida**
**SS#: ▓▓▓▓-6894**
**Date of Injury: 12/10/16 and continuing**
**Type of Claim: Defamation; False Arrest; Malicious Prosecution;**
**Discrimination**
**Location of Incident: Citrus County, Florida**

Dear Sir/Madam:

Please be advised that this firm represents Heather Cogar, who was injured and suffered additional harm on December 10, 2016 (and ongoing), due to defamation, false arrest, malicious prosecution and discrimination by the Citrus County Sheriff's Office ("Sheriff's Office"). This letter serves as notice of my client's claim, pursuant to Fla. Stat. § 768.28.

More specifically, Ms. Cogar, a Sheriff's Office employee, was twice falsely accused of illegal conduct by agents of the Sheriff's Office. She was falsely arrested and jailed by the Sheriff's Office without probable cause (she wasn't even read her Miranda rights). Multiple inconsistencies in the investigation have revealed that the Sheriff's Office and its agents have engaged in an unwarranted witchhunt against Ms. Cogar, constituting malicious prosecution under Florida law. All of the charges against her have been dismissed, despite the concerted efforts of male officers of the Sheriff's

1

Office, to provide false testimony against her under oath, a felony under Florida law. The allegations against Ms. Cogar were based on the false claim of battery, and a false claim of throwing a gun which were rejected by the Career Services Board. These two allegations made up the conduct unbecoming an officer charge sustained by the Sheriff, but were unsubstantiated by the CSB.

Even after all charges against her were proven false, the Sheriff's Office continued to unlawfully defame Ms. Cogar, including directly to media outlets. The Sheriff even went so far as to go on record falsely accusing Ms. Cogar of mental illness and alcoholism and stating that she needs to "get[] the help she needs to be successful here in our organization and in life." All of the evidence conclusively demonstrates that Ms. Cogar has not done anything wrong and that these accusations are false and outrageous. Ms. Cogar's treatment by the Sheriff's Office reflects an overarching pattern of gender discrimination by and within the Sheriff's Office.

In accordance with Fla. Stat. § 768.28, you are hereby notified that Ms. Cogar is hereby presenting this claim in writing for damages in excess of Fifteen Thousand Dollars ($15,000.00). Ms. Cogar does not owe to the State, its agencies, officers or subdivisions any prior adjudicated penalties, fines, fees, victim restitution fund, and/or judgments in excess of $200.

Your attention to this matter is appreciated.

Very truly yours,
WHITTEL & MELTON, LLC

Jay P. Lechner, Esq.

Cc:   Citrus County Sheriff's Office

2