[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 20-11003
Non-Argument Calendar

D.C. Docket No. 5:18-cv-00052-JSM-PRL

HEATHER COGAR,

Plaintiff-Appellant,

versus

Citrus County Sheriff's Office,

Defendant,

JEFF DAWSY,
Individually,
BRYAN HESSE,
Individually,
MIKE PRENDERGAST,
Sheriff of Citrus County Florida,
MIKE PRENDERGAST,
Individually,

Defendants-Appellees.

Appeal from the United States District Court
for the Middle District of Florida

(February 12, 2021)

Before JORDAN, BRANCH, and GRANT, Circuit Judges.

PER CURIAM:

Heather Cogar appeals the jury verdict returned against her in an action she brought that alleged gender discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2(a)(1), and the Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760. We affirm.

## I.

Cogar brought an amended action, in relevant part, against Mike Prendergast in his official capacity as Sheriff of Citrus County, Florida alleging gender discrimination, in violation of Title VII and the FCRA. She alleged that in January 2014 she was hired by the Citrus County Sheriff's Office ("CSO") as a Deputy Sheriff and that her job performance was excellent. She alleged that Sheriff Prendergast sanctioned and implemented a policy or custom of gender discrimination against female deputy sheriffs by condoning and encouraging a "good old boy" environment where female deputy sheriffs routinely suffered disparate treatment. Specifically, Cogar alleged that, in February 2015, while off

2

duty with a friend, she and the friend drove "around town wearing amusing masks." During this outing, her friend then made an illegal turn for which CSO Deputy Michael Sanchez pulled the car over. Cogar and her friend were directed to exit the vehicle with their hands in the air. Cogar took off her mask and did as instructed and, when Deputy Sanchez recognized her, "he became upset and told her to leave." Thereafter, an internal affairs ("IA") investigation was brought against her that resulted in her termination by the Sheriff at the time, Jeff Dawsy, for policy violations.[1] Cogar appealed the termination decision and was reinstated.

In December 2016, Cogar was arrested for domestic battery against her then boyfriend, a fellow deputy, and was again terminated by Sheriff Dawsy. She appealed the termination, and the board recommended she be reinstated as it was discovered that her boyfriend's "accusations against her were unfounded." Cogar alleged that eight days later, Prendergast, who was recently sworn in as Sheriff, hired her back but demoted and transferred her to the lower position of dispatcher. Specifically, in her new position she made less money, was not a sworn officer, was not eligible for high-risk retirement, and was unable to continue to work extra security jobs that supplemented her income.

---

[1] Cogar stated that she was told that the IA investigation was initiated following the receipt of an "anonymous" complaint, but Cogar believed that the "anonymous" complaint was made by one of the deputies who had pulled her friend over.

3

Cogar asserted two counts relevant to this appeal: (1) gender discrimination in violation of Title VII and (2) gender discrimination in violation of the FCRA. She argued that the adverse employment action for purposes of her claim was her demotion and reassignment to dispatch. While Sheriff Prendergast moved for summary judgment on the two counts, the motion was denied; the case went to a jury trial.

At trial, during opening statements, Cogar's counsel argued, in relevant part, that Sheriff Prendergast discriminated against Cogar based on the fact that she was a female officer when he "demoted [Cogar] from her prior position as Deputy Sheriff and dumped her in dispatch where she is not a law enforcement officer. She cannot carry a firearm. She cannot investigate, arrest or wear a badge."

Cogar testified that when she was initially hired by the CSO, she was assigned to road patrol. However, after being fired in 2015 and then rehired, she was transferred to the judicial division and was a bailiff at a courthouse. Cogar provided extensive details concerning the 2015 incident that led to her first termination.[2] The 2015 incident led to an IA investigation, following which,

---

[2] Cogar explained that, while off duty, she and her friend were wearing "elderly people" masks and driving around town one night. Cogar knew some of her coworkers were on duty, including Deputy Sanchez, and Cogar's friend "was trying to be amusing and entertaining and go to [Deputy Sanchez] to show him the mask while he was working . . . , and [Cogar] was the passenger in the vehicle." Cogar explained that, once they located Deputy Sanchez, they tried to catch up to him at a red light to show him the mask, hoping he would recognize them because he had seen them in the masks before and had seen them driving around in her friend's vehicle before. Cogar's friend then made a turn and Deputy Sanchez pulled them over. Cogar thought

4

Sheriff Dawsy terminated her for "violating laws regarding the Office of the Sheriff, . . . untruthfulness in an official inquiry, . . . and conduct unbecoming." Cogar appealed and was later reinstated and assigned to the judicial division.

Cogar further testified that, in December 2016, she was involved in a second incident. Specifically, she and her then-boyfriend got into an argument, and he lied to police and stated that she hit him and that she threw her loaded gun at him. Her arrest following this incident resulted in a second termination for "commission of a misdemeanor, misuse of a firearm, misuse and handling of a firearm and conduct unbecoming." She appealed her termination, and, following a hearing, the board found the allegations unsubstantiated and made a non-binding recommendation that she be reinstated to the judicial division.

Cogar explained that, notwithstanding the recommendation, Sheriff Prendergast upheld the conduct unbecoming violation and "demoted [her] into dispatch as a 911 operator." Cogar acknowledged that the paperwork referred to her "transfer" to dispatch, but Cogar explained that she considered her "transfer" to be a demotion because she it was "a lower paying position[3] with no retirement," she was no longer a sworn officer with a badge, and she could no longer work

---

they were being pulled over because Deputy Sanchez recognized them, but she quickly realized that was not the case when he initiated a felony traffic stop. She explained that the responding deputies were very upset with her, called her "stupid, immature, . . . an idiot" and told her to leave.

[3] Cogar testified that as an sworn officer she earned $18.70 an hour, but in dispatch she earned only $17.76 an hour.

5

private security details for extra money. Cogar testified that she felt the demotion was "undeserv[ed] because there are men that had done equally or worse things that have not been either punished at all or very minimally punished."

Sheriff Prendergast testified that he never discussed anything with former Sheriff Dawsy about Cogar, but that he did review the 2015 disciplinary action against Cogar as part of his decision to transfer Cogar to dispatch. Sheriff Prendergast explained that he disagreed with the board recommendation to reinstate Cogar to the judicial division following the 2016 incident, and he believed that Cogar should be disciplined for her conduct by a transfer to dispatch.

After Cogar rested her case, she objected to the defense calling as witnesses Deputy Sanchez and retired Sheriff Dawsy, and argued that their testimony would not be relevant, or, if relevant, would be unfairly prejudicial because Prendergast was the ultimate decision maker with regard to her demotion and he never spoke with Detective Sanchez nor Sheriff Dawsy about the 2015 incident. Thus, she asserted that the testimony of Sheriff Dawsy and Deputy Sanchez could only be relevant to the 2015 disciplinary action which was not the adverse action that formed the basis of her complaint. Rather, the only relevant adverse action was the demotion, transfer, decision made by Sheriff Prendergast." The court overruled the objection.

Deputy Sanchez then testified to the incident that occurred in February 2015.[4] Deputy Sanchez confirmed that he never spoke to Sheriff Dawsy nor Sheriff Prendergast about the incident but was interviewed about it by a detective as part of an IA investigation.

Retired Sheriff Dawsy testified that he discharged Cogar the first time in 2015 because the job is "extremely dangerous," and the February 2015 incident showed immaturity and that Cogar did not realize the seriousness of her conduct. Sheriff Dawsy stated that he terminated her instead of imposing a lesser punishment because she did not take the IA investigation seriously. Specifically, despite being asked to come in for an interview, Cogar kept making excuses to delay the interview for days, and even lied to the IA officer about having to attend a family event. Sheriff Dawsy explained that Cogar appealed the termination, the board recommended his decision to terminate her be overruled, and he accepted that non-binding recommendation and reinstated her employment because he

---

[4] Deputy Sanchez testified that he was pulled over on the side of the road when a white SUV passed his vehicle. Thereafter, as Deputy Sanchez pulled his vehicle onto the road heading southbound, he observed the white SUV sitting northbound in the median. As he passed it, he observed the SUV's "brake lights light up and do a U-turn" and start following behind Deputy Sanchez in the southbound lane. This action alarmed Deputy Sanchez because, at that time, there had been "a lot of ambushes on law enforcement." Deputy Sanchez sped up to create distance with the white SUV, but the SUV caught up with him. Deputy Sanchez slammed on his brakes at a red light and the SUV passed him and then made an illegal turn. Deputy Sanchez initiated a felony traffic stop, which entailed ordering the occupants out of the vehicle with their hands up. The driver exited the vehicle wearing an "elderly woman" mask, and Deputy Sanchez recognized the mask as one he had seen Cogar wear at a prior event. Deputy Sanchez asked the driver if Cogar was in the car, and she confirmed that Cogar was in the passenger seat. Deputy Sanchez gave the driver a verbal warning.

valued the board and thought with maturity Cogar could become a valuable member of the CSO.

Sheriff Dawsy testified that he again felt it necessary to terminate Cogar in 2016 because she was arrested following a domestic incident, based on probable cause, and his policy at the time was if an employee was arrested, they were terminated. He testified that Cogar appealed her termination, but he was no longer the Sheriff at that point. He confirmed that he never discussed with Sheriff Prendergast any disciplinary issues with any employee that occurred while he was Sheriff.

In closing arguments, Cogar reiterated that Sheriff Prendergast discriminated against her on the basis of her gender by "demoting [her] into dispatch. He took away her ability to be a deputy sheriff and he did it for an illegal reason."

The district court instructed the jury, in relevant part that:

> To succeed on her claim against Sheriff Prendergast, Ms. Cogar must prove each of the following facts by a preponderance of the evidence.
> First, that Sheriff Prendergast subjected her to an adverse employment action by placing her in a dispatch role. . . .
> To prove that Heather Cogar was subjected to an adverse employment action, you are instructed that an adverse employment action is a serious and material change in the terms, conditions or privileges of employment.

The court also instructed the jury regarding the verdict form:

> It says, do you find from a preponderance of the evidence:

8

> 1) That Sheriff Prendergast subjected Heather Cogar to an adverse employment action by placing her in a dispatch role? Answer, yes or no. And there's blank there for you to answer the question.
> Then it tells you what to do. If your answer is no, this ends your deliberations and you should skip the remaining questions, sign the verdict form and turn it into the Court. If your answer is yes, you should go on to answer the next question.

Prior to the reading of the jury instructions, Cogar had unsuccessfully objected to the reference to her being "placed" in a dispatch role, arguing that the jury should be instructed that it was a "demotion" or "transfer," and that the reference to placement suggested that "it was some kind of lateral non-adverse" decision. The district court overruled her objection, noting that whether or not Cogar being placed in dispatch was a demotion was a jury issue and that Cogar could argue that point, but it was for the jury to decide.

Following deliberation, the jury determined that Cogar was not subjected to an adverse employment action, and judgment was entered in favor of Sheriff Prendergast. This appeal followed.

## II.

Title VII provides that it is unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1). The plaintiff must initially establish a prima facie case, which generally consists of the following: (1) the plaintiff was a member of a protected class; (2) she was qualified to do the job;

(3) she was subjected to an adverse employment action; and (4) she was treated less favorably than similarly situated individuals outside her protected class. *Holland v. Gee*, 677 F.3d 1047, 1055 (11th Cir. 2012).

## A.

Cogar argues that the district court committed reversible error when it allowed Sheriff Dawsy and Detective Sanchez to testify about the 2015 incident because the testimony was: (1) not relevant, (2) unfairly prejudicial, and (3) constituted inadmissible character evidence.

We review a district court's evidentiary rulings for an abuse of discretion. *Eghnayem v. Bos. Sci. Corp.*, 873 F.3d 1304, 1313 (11th Cir. 2017). We will not reverse based upon an erroneous evidentiary ruling unless the error impacted the substantial rights of the complaining party. *Vista Mktg., LLC v. Burkett*, 812 F.3d 954, 979 (11th Cir. 2016); 28 U.S.C. § 2111. The burden is on the complaining party to prove the erroneous ruling impacted her substantial rights. *Perry v. State Farm Fire & Cas. Co.*, 734 F.2d 1441, 1446 (11th Cir. 1984). The substantial rights of a party are affected by errors if the errors have a substantial influence on the outcome of a case or create a grave doubt as to whether they impacted the outcome of a case. *Hearn v. McKay*, 603 F.3d 897, 904 n.11 (11th Cir. 2010). A plaintiff's failure to prove she suffered an adverse employment action is dispositive of an employment discrimination claim. *See Hipp v. Liberty Nat'l Life Ins. Co.*,

10

252 F.3d 1208, 1233 n.39 (11th Cir. 2001) (discussing that we did not need to address other issues because those issues did not matter since the plaintiffs failed to establish that they were subjected to an adverse employment action).

Here, as an initial matter, contrary to Cogar's claim, testimony concerning the 2015 incident was relevant because Sheriff Prendergast testified that he considered the 2015 disciplinary action in making his decision to transfer Cogar to dispatch. Additionally, Cogar's testimony concerning the 2015 incident as part of her case-in-chief in this civil action opened the door to rebuttal testimony by the defense. *See, e.g., Morro v. City of Birmingham*, 117 F.3d 508, 517 (11th Cir. 1997) (holding that the defendant opened the door to a report that recommended an employee be reinstated because the charges against him were not supported when the defendant argued in its opening statement that the personnel board made its reinstatement decision because it "felt sorry for [the plaintiff"); *Wood v. Morbark Indus., Inc.*, 70 F.3d 1201, 1208 (11th Cir. 1995) (by offering testimony in a products liability suit concerning the safety of its product, the defendant opened door for impeachment questions concerning subsequent modifications of the product).

Regardless, even assuming arguendo that the testimony of Deputy Sanchez and Sheriff Dawsy was erroneous, any error was harmless. Specifically, the jury concluded that Cogar failed to prove an essential element of her claim—that her

11

transfer to dispatch was an adverse employment action. Cogar therefore cannot prove that the court's admission of their testimony concerning the 2015 incident substantially impacted her rights by substantially influencing the outcome of the case because it was her failure to prove that she was subjected to an adverse employment action that was fatal to her claim. *See Hearn*, 603 F.3d at 904 n.11; *Hipp*, 252 F.3d at 1233 n.39.

## B.

Cogar argues that the district court committed reversible error by failing to instruct the jury that the adverse employment action was "transferring" her to the dispatcher position and instead saying she was "plac[ed]" in a dispatcher role. She argues that the reference to her placement in the dispatcher role was misleading to the jury because "placed" conveys a non-adverse, lateral, or even positive action by her employer.

We review the legal correctness of a jury instruction *de novo* but will defer on questions of phrasing absent an abuse of discretion. *Fid. Interior Constr., Inc. v. Se. Carpenters Reg'l Couns.*, 675 F.3d 1250, 1259 (11th Cir. 2012). "The district court has broad discretion in formulating jury instructions as long as those instructions are a correct statement of the law." *Id.* (quotation omitted). Furthermore, "[j]ury instructions are subject to harmless error review." *Id.* (quotation omitted)

Here, the district court did not abuse its discretion in instructing the jury. The court instructed the jury—in accordance with the law—that to succeed on her claim, Cogar must have established that she was subjected to an adverse employment action, and accurately instructed the jury that "an adverse employment action is 'a serious and material change in the terms, conditions, or privileges of employment.'" *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1203 (11th Cir. 2013) (quoting *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001)). Thus, notwithstanding the reference to Cogar's placement in the dispatch role, the instruction at issue was legally accurate. Cogar's argument that a "placement" decision is not an adverse employment action under our precedent is without merit.[5] Moreover, when the jury instructions are considered in context of the record as a whole—particularly Cogar's opening and closing statements—it is clear that the jury understood that Cogar's argument was that her role in dispatch was a demotion, such that any error in the reference to Cogar being "plac[ed] in a dispatch role" was harmless. *See Estelle v. McGuire*, 502 U.S. 62, 72 (explaining that jury instruction "may not be judged in artificial isolation, but must be considered in context of the instructions as a whole and the trial record" (quotation

---

[5] Cogar cites *Brown v. Snow*, 440 F.3d 1259 (11th Cir. 2006), for the proposition that the use of the term placement was inconsistent with the law. However, *Brown* dealt with an allegedly adverse employment action of a downgraded performance evaluation and a failure to promote claim; it had nothing to do with whether placing someone in a position can constitute an adverse employment action and the terms placement, transfer, nor demotion do not appear anywhere in the text of the opinion. *See id.* at 1261-67.

omitted)); *Fid. Interior Constr., Inc.*, 675 F.3d at 1259 (explaining that jury instructions are subject to harmless error review).

**AFFIRMED.**

# Lynne Burget

**From:** ecf_help@ca11.uscourts.gov
**Sent:** Friday, February 12, 2021 3:11 PM
**To:** FLMD_EFILE_APPEALS
**Subject:** 20-11003-HH Heather Cogar v. Jeff Dawsy, et al "Opinion Issued On the Courts own Motion Opinion" (5:18-cv-00052-JSM-PRL)

***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing.

## United States Court of Appeals for the Eleventh Circuit

**Notice of Docket Activity**

The following transaction was filed on 02/12/2021

| | |
|---|---|
| **Case Name:** | Heather Cogar v. Jeff Dawsy, et al |
| **Case Number:** | 20-11003 |
| **Document(s):** | Document(s) |

**Docket Text:**
Opinion issued by court as to Appellant Heather Cogar. Decision: Affirmed. Opinion type: Non-Published. Opinion method: Per Curiam. The opinion is also available through the Court's Opinions page at this link http://www.ca11.uscourts.gov/opinions.

**Notice will be electronically mailed to:**

Clerk - Middle District of Florida, Clerk of Court
Brian Koji
Jason Michael Melton
William J. Sheslow
Carly Stein


The following document(s) are associated with this transaction:
**Document Description:** Opinion Issued
**Original Filename:** 202011003.pdf
**Electronic Document Stamp:**
[STAMP acecfStamp_ID=1160056652 [Date=02/12/2021] [FileNumber=9308280-0]
[3fd4d00e3b59c846b9659aba461b7722528888c496c87609335b9c4871eeffcd4659af689bb7b98c0d3254a5471a96c427
09ebb9cc002b21f8b1afc1e660d336]]

**Document Description:** OPIN-1A Notice to Counsel/Parties
**Original Filename:** /opt/ACECF/live/forms/JeffreyPatch_2011003_9308280_OPIN-

1AIssuanceofOpinionWithCosts_301.pdf
**Electronic Document Stamp:**
[STAMP acecfStamp_ID=1160056652 [Date=02/12/2021] [FileNumber=9308280-1]
[884ed26fbae05ee8731d24cbde8cb12c6199e57955f3713bf03661c1db897a9a55e9882d9b62d562c499b7385c942315d0
ccb9458daea9211db62c109ade9e6d]]
**Recipients:**

- Clerk - Middle District of Florida, Clerk of Court
- Brian Koji
- Jason Michael Melton
- William J. Sheslow
- Carly Stein